DULCINIA MANWELL, Adm'x of STEPHEN MANWELL, v. WILLIAM P. BRIGGS.

The doctrine of the case of *Ladd* v. *Hill*, 4 Vt. 164, in reference to the right of the county court to dismiss a suit for want of jurisdiction, re-affirmed.

An administrator, suing in trover, may always declare in his representative capacity, when the property belongs to the estate. And, *Per* REDFIELD, J., if he has once had actual possession of the property, he may maintain an action of trover for it in his own name.

A contract between A., the owner of a note, and B., that B. may take the note, and collect it at his own expense, and have one half of what he collects, vests no interest in the note in B., nor does it preclude A. from collecting the note, if he has an opportunity.

A contract of sale, upon condition, vests no title in the vendee until the performance of such condition, unless the performance is waived.

A mere mental determination to rest satisfied with the non-performance of such condition, not procured by the vendee nor notified to him, will not operate as a waiver of such condition, so as to vest the property in the article sold in the vendee.

If there have been a tortious use, or taking, of property, a subsequent demand of it will not operate as a waiver of such conversion, nor entitle the defendant to prove an offer to return upon such demand.[*]

It is error to charge the jury that they may find a fact, when there is no legal testimony tending to prove such fact.

TROVER for a note, describing it, and for a horse.. Plea, the general issue, and trial by jury. On trial there was found a fatal variance between the note offered in evidence and the declaration, and the trial proceeded as to the horse alone.

The plaintiff introduced evidence tending to prove that the plaintiff's intestate, about the year 1835, held a note against one Hoyt,

---

[*]*Hart* v. *Skinner*, 16 Vt. 138. *Yale* v. *Saunders et al.*, Ib. 243. *Green* v. *Sperry*, Ib. 390.

Manwell, Adm'x, v. Briggs.

then residing in western New York, for $65, dated in 1829; that the intestate agreed with one James Briggs, the defendant's brother, who was then going to western New York, to take the note, and collect it, if he could, at his own expense, and have, for his trouble, one half of what he collected; that the note remained in New York until the fall of 1838, which was after the intestate's death, when Hoyt returned to Vermont with a horse, which he left in the stable of one Field, in Jericho; that the plaintiff applied to Hoyt to get the horse as part payment upon the note above mentioned, and that Hoyt agreed that the plaintiff might take the horse at $75, or $80, and that the plaintiff agreed to give up to Hoyt the note, or, if the note was not obtained from New York, to give him a discharge for $75, or $80, on the note; and that the plaintiff, in the absence of Hoyt, went and took the horse from the stable of Field.

Hoyt was a witness, among others, for the plaintiff, and, on cross examination, stated that he expected the plaintiff would take the horse, and that he told her she might do so, if she would bring the note, or some paper discharging him from the note, to the amount of the value of the horse; but that she took the horse without bringing either.

The defendant, after proving the contract between the intestate and James Briggs to have been as above stated, introduced evidence tending to prove, that, about the time Hoyt returned to Jericho with the horse in question, James Briggs also returned upon a visit, and, finding that Hoyt had returned, requested his brother, the defendant, to procure the note from New York, where it then was, and either attach the horse, or in some way procure an application of the horse upon the note; that the defendant sent and procured the note, and called on Hoyt for payment a week or ten days after Hoyt had turned out the horse to the plaintiff; that Hoyt then informed the defendant that he had turned out the horse to the plaintiff upon the note, and the defendant thereupon told him that he should hold him upon the note,—but that, if he would get back the horse from the plaintiff, and deliver it to him, he would give him up the note; and that thereupon Hoyt took the horse from the plaintiff,—the plaintiff forbidding him,—and delivered him to the defendant, and the defendant delivered the note to Hoyt.

23

Manwell, Adm'x, v. Briggs.

The defendant then offered to prove, that, after he had kept the horse several months, the plaintiff came to him and demanded the horse; and that he then offered to deliver the horse to the plaintiff. To this testimony the plaintiff objected, and it was excluded by the court.

But two witnesses testified as to the value of the horse, both of whom were introduced by the plaintiff; one of them appraised the horse at $30 or $40,—the other at about $30. The defendant moved to dismiss the suit for want of original jurisdiction in the county court; but the court overruled the motion.

The defendant insisted that this suit could not be maintained by the plaintiff, as administratrix, and that the contract made between the plaintiff and James Briggs could not be rescinded without the consent of James Briggs. But the court charged the jury, that, if they found that Hoyt turned out the horse to the plaintiff upon the note, and so informed the defendant, and afterwards, at the request of the defendant, took the horse against the will of the plaintiff and delivered him to the defendant, the defendant would be liable for the value of the horse. But that, if the plaintiff was authorized to take the horse from the barn of Field only upon condition that she first brought and delivered to Hoyt the note, or some paper discharging him from the note, and she in fact took the horse, in the absence of Hoyt, without complying with such condition, then Hoyt had a right to retake the horse, and the defendant would not be liable. But that, even if the plaintiff did take the horse without complying with such condition, if Hoyt was afterwards satisfied to have her keep the horse, and so informed the defendant before the defendant directed him to take the horse, the defendant would be liable, if Hoyt took the horse and delivered him to the defendant by the defendant's procurement; and that, in this point of view, the testimony above detailed, tending to show that Hoyt told the defendant that he had turned out the horse to the plaintiff, was important.

The court farther instructed the jury that the plaintiff might maintain this action in her capacity as administratrix.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

Manwell, Adm'x, *v.* Briggs.

*Hyde & Peck* and *Briggs & Underwood* for defendant.

1. The county court had no jurisdiction of the case. The case shows that an action could not be maintained for the note, and the horse was worth only $30 or $40.

2. The property in question having come to the plaintiff since the death of the intestate, the suit should have been *by*, and the property and possession laid *in*, the plaintiff in her own right. *Eaves* v. *Mocato*, 1 Salk. 314. *Jenkins* v. *Plume*, Ib. 207. *Adams* v. *Campbell*, 4 Vt. 448. *Hollis* v. *Smith*, 10 East. 293. *Marsh* v. *Yellowly*, 2 Str. 1107. *Bollard* v. *Spencer*, 7 T. R. 358. *Munt* v. *Stokes*, 4 T. R. 565. *Goldthwayte* v. *Wood*, 5 T. R. 234. Tol. on Ex'rs 439. 4 T. R. 256.

3. The contract between the intestate and James Briggs was valid, and was not vacated by the death of the intestate. The possession of the note by James Briggs was a possession coupled with an interest; the plaintiff was therefore tenant in common with him, and not liable in trover; and the defendant, his agent, has all the rights of his principal. *Hunt* v. *Silk*, 5 East 448. 4 Dane's Abr. 471. 14 Mass. 266. *Conner* v. *Henderson*, 15 Mass. 319.

4. As the plaintiff took the horse without complying with the conditions of the contract between her and Hoyt, the taking was unlawful, and Hoyt had a right to retake the property without being liable in trover; and the defendant is not liable for advising him to do a legal act.

5. There is no evidence in the case, tending to show that Hoyt had ever signified to the plaintiff his acquiesence in her act, in taking the horse before complying with the contract, or that he had in any way notified her of his intention to waive his right to retake the property; and no such intent on his part, not communicated to the plaintiff, would bar him of this right. Hoyt having this right, whatever the defendant may have said, to induce him to assert it, it would not make the defendant liable.

6. The evidence of a demand of the property by the plaintiff, and an offer by the defendant, at the same time, to restore it, although accompanied by a refusal of the plaintiff to receive it, should have been received, either in bar of the action, or in mitigation of damages. 2 Phil. Ev. 234. B. N. P. 46. 6 Bac. Abr. 629. 3

Stark. Ev. 1167–8. *Wheelock* v. *Wheelwright*, 5 Mass. 104. Jac. Law Dict., Tit. TROVER. *Reynolds* v. *Shuler*, 5 Cow. 323. *Plevin* v. *Henshall*, 25 E. C. L. 17. *Cook* v. *Hartle*, 34 E. C. L. 528. *Baldwin* v. *Porter*, 12 Conn. 473. *Murray* v. *Burling*, 10 Johns. 172. *Shotwell* v. *Wendover*, 1 Johns. 65. *Haywood et al.* v. *Seaward et al.*, 28 E. C. L. 269. *Irish* v. *Cloyes et al.*, 8 Vt. 30. 1 Johns. Cas. 406. Conceding that a party, after a conversion, has his election to pursue the property or go for the value in damages, yet if he elect to follow the property, and make a demand, and the defendant then offer to restore it, he is bound by his election.

*D. A. Smalley* for plaintiff.

1. The county court had jurisdiction. The note described in the three first counts of the declaration amounted to about $106, and the plaintiff had reason to suppose that she could recover for the whole. *Ladd* v. *Hill*, 4 Vt. 164. *Morrison* v. *Moore*, Ib. 264. *Spafford* v. *Richardson*, 13 Vt. 224. *Kittredge* v. *Rollins et al.*, 12 Vt. 541.

2. The horse, when taken and delivered to the defendant, was the property of the estate in the hands of the administratrix. James Briggs never had any interest in the note; he was to have *one half of what he collected;* but, when the horse was turned out to the plaintiff, he had collected nothing. The act of Hoyt, in taking the horse, was the act of the defendant. 2 Saund. R. 47 *i* to *k*. 1 Chit. Pl. 176.

3. The note and horse being *assets* in the hands of the administratrix, belonging to the estate, the money, when recovered, will also be assets. The suit is therefore properly brought in the plaintiff's representative capacity: 2 Saund. R. 47 *k*. *Blainfield* v. *March*, 7 Mod. 141. *Cowell et ux.* v. *Watts*, 6 East 405. 1 Ch. Pl. 23. 1 Saund. Pl. & Ev. 496. *The King* v. *Thom*, 1 T. R. 487. *Alling*, *Adm'r*, v. *Munson*, 2 Conn. 691. *Valentine* v. *Jackson*, 9 Wend. 302. *Foster* v. *Gorton*, 5 Pick. 185. *Baxter*, *Adm'r*, v. *Buck*, 10 Vt. 548.

4. The evidence of Hoyt was properly submitted to the jury. It was competent for him, before any action by the defendant, to waive the condition and rely upon having the note, or discharge,

thereafter.　And if Hoyt was satisfied with the defendant's taking the horse, it is sufficient.

5.　The demand of the horse, after an *actual conversion* by the defendant by a *tortious taking* and *holding* for several months, though the defendant offered then to deliver him up, cannot affect the case, inasmuch as she refused to accept him.　*Hart v. Skinner,* 16 Vt. 138.

The opinion of the court was delivered by

REDFIELD, J.　1.　We think there is no doubt that the motion to dismiss the action for want of jurisdiction in the county court was correctly overruled.　The case is the same, in principle, with that of *Ladd* v. *Hill,* 4 Vt. 164, and, in its facts, somewhat stronger than that case in favor of the jurisdiction of the county court.

2.　We think the suit is well enough brought in the name of the plaintiff in her representative capacity.　The administrator, under our statutes, which are much the same as the English Statute of 4 Edward III, c. 7, may sustain trover, either for a conversion during the life of the intestate, or, after the decease, either before or after administration granted.　In the former case he must declare in his representative capacity, counting upon the possession and property of the intestate, or upon the administrator's seisin by relation, and in the two latter cases the suit may be in the name of the administrator as an individual merely, counting upon his naked possession, when he ever had such possession *in fact;* otherwise in all cases, when the property is in the estate, the declaration should be in the name of the administrator, as such.　1 Ch. Pl. 58–60.　*Towle* v. *Lovet,* 6 Mass. 394.　*Foster* v. *Gorton,* 5 Pick. 185.　28 E. C. L. 105.　1 Ad. & El. 354.　Story's Conf. of Laws 433.

3.　We do not think that the contract between Stephen Manwell and James Briggs, as detailed in the bill of exceptions, was sufficient to vest any interest in the note in Briggs, or in any thing which should be collected on the note, unless collected by him.　The case of depositing a note with a third person, upon the terms that he have one half he can collect upon it, is not very uncommon, and is not understood to vest any interest in the note in such depositary, or as

precluding the owner of the note from collecting it himself, if he have an opportunity.

4. As the testimony was, and as the case was put to the jury, we are to understand that the jury might have found, and probably did find, that the plaintiff took the horse before any contract was closed,—before she had performed the necessary conditions on her part. If so, it is settled law that no title would vest in her. 3 Stark. Ev. 1148 & note, citing *Bishop* v. *Shillito*, 2 B. & Ald. 329, note.

5. But the jury were told that this condition would be waived, if "Hoyt was afterwards *satisfied* to have her [the plaintiff] keep the horse, and he so informed the defendant, before the defendant directed him to take the horse." If by "*satisfied*" is meant a mere mental conclusion to waive the condition, and this not notified to any one, then it is not true that such a mental determination would affect the title of the property, which had been wrongfully taken by the plaintiff. If the plaintiff had done any act, in order to induce this waiver of the condition, or had been informed of it, and acted upon it, the waiver would then have become irrevocable;—but not so when it was a mere mental waiver, and was made known only to the defendant, or any other person not interested in the performance of the condition. This is the natural import of the word "satisfied," and the sense in which it was probably used to the jury.

But if we should construe the term as importing something beyond this,—as implying an express waiver of the condition, made known to the plaintiff,—there is still a difficulty in sustaining the case,—there being no evidence tending to show that any such fact existed. And if the plaintiff would get along with his case upon the ground that Hoyt had waived this condition in the sale, she must prove that fact; and a jury cannot be permitted to draw any such conclusion by mere conjecture. The important testimony upon this point, to which the jury were referred, was, that Hoyt told the defendant that " he had turned out the horse to the plaintiff on the note." We do not think this has any tendency to show that the contract of sale was closed by Hoyt's waiving the condition

which was at first annexed to it. If Hoyt told the defendant that he had turned the horse out upon the note, it seems quite as probable that he told him upon what conditions, as that he omitted to state the conditions; and if we could suppose that he did omit to state the conditions, we should more naturally conclude that he had merely determined in his own mind not to insist upon the conditions, than that he had expressly so stipulated with the plaintiff. If this were the true state of the case, then Hoyt and the defendant would be without fault.

In regard to the conversion,—if there had been a tortious use, or taking, of the horse, which of itself amounted to a conversion, a subsequent demand would hardly amount to a waiver of such conversion. But the evidence of a conversion, which should result from a mere demand and refusal, would be very much affected by a subsequent demand and the defendant's then offering to surrender the property. It is upon this ground, if any, that the case of *Haywood* v. *Seaward et al.*, 1 Moore & S. 459, [28 E. C. L. 269,] is to be justified. In that case the defendants had in their possession a boiler belonging to the plaintiffs, who demanded it, and the defendants at first refused to give it up, but afterwards, and before the issuing of the writ, tendered it to the plaintiffs,—and it was held no conversion.

Judgment reversed, and case remanded for a new trial.