CHARLES DANA, Administrator of GILL WHEELOCK, *v.* JOEL LULL.

[Same Case, 17 Vt. 390.]

If the plaintiff in a suit, the cause of action in which does not survive, die, while the suit is pending in the county court, and his administrator enter and prosecute the suit, and trials are had in the county court, and the case is carried to the supreme court on exceptions, and no motion to dismiss the suit is filed in the county court, such motion, filed for the first time in the supreme court, will be out of time. The objection is not analogous to an objection for want of jurisdiction.

Dana, Adm'r, v. Lull.

Under the Revised Statutes, chap. 48, sec. 10, which provides, that "actions of trespass and trespass on the case, for damages done to real or personal estate," shall survive, an action of trespass on the case against a sheriff, for the default of his deputy, in not keeping property attached upon *mesne* process and not delivering it to the officer holding the execution obtained in the suit, will survive.

The case of *Adm'r of Barrett* v. *Copeland,* 20 Vt. 244, considered and explained.

IN this case, which was argued at a previous term upon exceptions taken in the county court, and which the court had retained for advisement, the defendant, at the present term, filed a motion to dismiss the suit, on account of the decease of the plaintiff,—claiming that the action, which was trespass on the case for the default of the defendant, as sheriff, in not keeping property attached by his deputy on *mesne* process and not delivering it to the officer who held the execution obtained in the suit, did not survive. The facts are fully stated in the opinion delivered by the court.

*Washburn & Marsh* and *O. P. Chandler* for defendant.

The motion to dismiss this suit is founded upon the decision of this court in the case of *Adm'r of Barrett* v. *Copeland,* 20 Vt. 244, giving a construction to the Revised Statutes, ch. 48, sec. 10.[*] The cause of action having died with the person to whom it accrued, the right of the defendant to have the suit dismissed cannot be waived by his delay in filing his motion. It is analogous to a case, where the court have no jurisdiction. In such case the action will be dismissed, whenever the attention of the court is called to the fact. *Dove* v. *Martin,* Comb. 169. *Stokes* v. *Porter,* Bend. 74. 1 Cov. & H. Dig. 2, 3. 1 Chit. Pl. 57. 3 Bl. Com. 302. *Herring* v. *Selden,* 1 Vt. 17. 2 Saund. R. 72, n. 1.

---

[*] Which section is in these words;—"In addition to the actions, which survive by the common law, the following shall survive and may be commenced and prosecuted by the executor or administrator, that is to say, actions of ejectment or other proper actions to recover the seisin or possession of any lands, tenements or hereditaments, actions of replevin and trover, and actions of trespass and trespass on the case for damages done to real or personal estate."

*T. Hutchinson* and *Tracy & Converse* for plaintiff.

1. The motion is out of time. It raises no question of jurisdiction, but attacks the whole cause of action back to the decease of Wheelock. There is common sense and justice in that well settled principle of the common law, that every objection to an action, which needs to come by plea, must come at the proper time, to save useless expense upon other points. This is even true as to objections of jurisdiction, if the want of jurisdiction do not appear of record.

2. If this question had been raised in the most proper way and at the most proper time, it ought not to avail the defendant. We trust the court will revise the decision in *Adm'r of Barrett* v. *Copeland*, before they treat it as settling the law of survivorship in actions for the neglect of sheriffs and constables. This class of actions is of vast extent. It has always been so. And the statute of 4 Edw. III, and the decisions under it, may well be considered as common law here, since its adoption by our statute of 1787, re-enacted in 1797. We suppose the rule to be, that, in all remedial statutes, all cases attended by the injury are to partake of the remedy,— or, in other words, that all cases, fairly within the equity of a remedial statute, shall be adjudged as within the statute, though not within its letter; and this without entering upon the inquiry, whether, by the terms of the statute, the cases named are put *for instance, merely,* or *principally.* We are disposed to consider it the common law of Vermont for a long course of years, that all actions survive, the recovery of the plaintiff in which would be for a sum in damages for an injury sustained with regard to property, not with regard to injuries to real estate or to the person of the plaintiff.

3. This case and that of *Adm'r of Barrett* v. *Copeland* differ in one most essential point. In that case the default charged upon the defendant was in making a false return, by which the plaintiff was defeated in an action of trespass and false imprisonment. There was nothing said about any property. But in this case the defendant, by his deputy, had attached upon the plaintiff's writ certain articles of personal property. That attachment and the consequent judgment in his action established the right of the plaintiff to have that property, still in the custody of the defendant, sold to pay the plaintiff's judgment. The recovery against the defendant in this

49

case was for the value of this specific property, of which the wrong of the defendant has deprived the plaintiff's intestate.

The opinion of the court was delivered by

POLAND, J. The facts in this case, as shown by the record, are as follows. The plaintiff's intestate, in 1839, brought his suit against Moulton & Hutchinson, and his writ was served by one of the defendant's deputies, by attaching certain articles of personal property belonging to said Moulton & Hutchinson. In 1840 the plaintiff's intestate recovered a final judgment in his suit against Moulton & Hutchinson, and within thirty days after the rendition of his judgment he took out an execution thereon and delivered it to the defendant, to be levied upon the property so attached upon his original writ; but the defendant, (as the plaintiff alleges,) neglected to levy the execution upon the property, but suffered the same to go back into the possession of Moulton & Hutchinson, whereby the plaintiff's intestate lost his lien upon the property, and, to that extent, was deprived of the means of obtaining satisfaction of his debt. The present suit against the defendant was brought by the plaintiff's intestate to the May Term of Windsor county court, 1841; and at the May Term of said court, 1842, the death of the intestate was suggested, and the plaintiff entered as administrator to prosecute the suit. After two verdicts for the defendant the case was brought to this court by the plaintiff, on exceptions, and in 1845 this court reversed the judgment of the county court and remanded the same for another trial in that court. At the March Term of the county court, 1846, the plaintiff obtained a verdict and the case was again brought before this court, on exceptions to the decision of the county court, filed by the defendant. At the present term of this court the defendant interposes a motion to dismiss the suit, upon the ground that the cause of action was one which did not survive to the plaintiff, as administrator of Gill Wheelock. Two questions arise upon this motion of the defendant.

1. Admitting that the defendant is right, in saying that the cause of action was not of that class, which, under our Revised Statutes, would survive to the plaintiff upon the death of his intestate,—is this motion, or defence, interposed in season to enable the defendant to avail himself of it? It should be remarked, that, upon an in-

spection of the record in the present case, (and especially of the exceptions, which were taken and filed by the defendant upon the last trial of this cause in the county court, and upon which a new trial is sought to be obtained in the cause,) it does not appear, that any objection was ever before raised to the maintaining of this action by the plaintiff, as administrator, until this motion was filed at this term of this court.

Ever since the introduction of the practice in this state to bring up cases from the county court to this court for revision upon motions for new trials, founded upon exceptions taken to the decisions and rulings of the county court, it has been settled, that this court will not revise or notice any questions in the case, except such as are shown by the record to have been *raised* and *decided* by the county court upon the trial below. The cases, where this doctrine has been stated, are so numerous, and it is now so generally understood by the profession, as to render it unnecessary to cite cases in its support.

It is insisted, however, by the counsel for the defendant, that in the present case the objection rests upon a stronger foundation, and cannot be considered as waived by any neglect of the party to make the objection at an earlier period; and that the objection is similar to that of a want of jurisdiction in the court,—which objection, it is said, never comes too late, and is never waived by delay. We think, however, that this view, which has been very strongly urged upon us, is unsound. The most, that can be made of it, is this, that the party had a ground of defence, which would have enabled him to defend successfully, had it been raised and urged in the court, but that, either from inadvertence or a mistaken view of his rights, he omitted to make it in the county court, and suffered a judgment to pass against him. It would be a very strange doctrine, to hold, that, where a party had due notice, and appeared and defended a suit, a judgment against him was a mere nullity, and the whole proceeding *coram non judice*, because he had omitted to avail himself of a tenable ground of defence, even when such ground of defence might appear upon the face of the record itself.

To test this doctrine of the defendant, suppose that he had omitted to take and file any exceptions to the decision of the county court, and thus suffered that judgment to become final against him,

—could he have sustained *audita querela* to set the judgment aside?
or could the plaintiff have been made a trespasser for what might
have been done under his execution, upon the ground that the judg-
ment was void and did not support it? But the judgment and de-
cisions of the county court are regarded as much final and conclu-
sive, as to all matters, except such as are specially reserved for the
opinion of this court, as if the whole case had been suffered to rest
upon their adjudication. In short, we are all agreed, that, if what
is stated in this motion would have furnished a good ground of de-
fence to this action, if made at the trial, by not making it then
the defendant has lost his right to insist upon it in this court, which
sits merely to revise decisions of the court below.

2. The foregoing view would of course be sufficient for the de-
termination of this motion to dismiss;—but as a much more impor-
tant question has been discussed, that is, whether the cause of action
in this case was one that survived to the plaintiff, as administrator,
and as the question is of practical consequence, we have thought it
advisable to give our views upon that question also.

The whole argument of the defendant upon this point is based
upon the decision of the court in the case of *Adm'r of Barrett v.
Copeland*, 20 Vt. 244. The facts of that case were as follows :—
Copeland was an officer of the county of Rutland, and had arrested
Barrett in the county of Bennington. Barrett brought his suit
against Copeland for trespass, for a false imprisonment. Copeland
justified the arrest and imprisonment under an execution, which he
held against Barrett; and, for the purpose of showing, that he had
a right to arrest him out of his precinct, he claimed to have previ-
ously arrested Barrett upon the execution in Rutland county, that
Barrett escaped from him, and that he pursued and retook him in
Bennington county ; and, as evidence to show these facts, Copeland
made a return to that effect upon the execution in his hands. In
consequence of this return, Barrett failed in his suit against Cope-
land for false imprisonment, and he then brought a suit against
Copeland, for making said return on the execution against him,
claiming, that the same was made falsely. During the pendency
of this last suit, Barrett died, and his administrator entered to pros-
ecute, upon which the defendant moved to dismiss the suit, upon
the ground that the cause of action did not survive to the adminis-

trator; which motion was sustained by the county court, and this court affirmed their judgment.

The decision of the court in that case we have no doubt was entirely correct, though some of the expressions used by the judge in giving the opinion, if they are to be understood in the most extended signification, would narrow and limit the survivorship of action, beyond what we should be disposed at this time to hold. The action in that case was, not only in *form*, but in *reality*, for a *tort ;* and although it was against the defendant as an officer, still we think the case a very different one from a case like the present, where the action is *ex delicto* in form merely. Indeed, we think the cause of action in the case of *Adm'r of Barrett* v. *Copeland*, could not have been holden to survive under the enlarged and liberal rule, which obtained under the statute of 4 Edw. III,—which was, that all actions for injuries, or wrongs, which were directly detrimental to the assets of the deceased, survived to his representative. The plaintiff in that case complained, that, by the false return of the defendant, he had been prevented from recovering damages in an action for a personal injury, which would itself have died with him ; and it was only indirect and consequential, and could not be said to be a pecuniary injury, any more than loss of time, or inability to labor, or to attend to business, by reason of a battery, or an imprisonment ; and still less so than a case, where a party had been compelled to pay money for nursing or medical services.

But we think the present case stands upon an entirely different ground from the case of *Adm'r of Barrett* v *Copeland*, and that the cause of action here may be holden to survive, without trenching at all upon the authority of that case. Here the defendant had attached certain specified property on the writ of the plaintiff's intestate ; it was his duty, either to retain the property in his own possession, or to hold good security to have it forthcoming when the plaintiff's intestate obtained his execution, and the legal presumption is, that he did so ; the plaintiff's intestate had, by his attachment of that property, an inchoate right, or *lien*, upon it, which was perfected by his obtaining final judgment; and although the property, under such circumstances is considered so far in the officer, that, for an injury to it, or taking it, the action must be brought in the officer's name, still he holds it in the right of the creditor and for his benefit ; and

such special property, or *lien,* is entirely under the control of the creditor. The sheriff, under such circumstances, though in one sense, the agent of the law, and acting as a public officer, is still considered as the agent of the creditor and acting for him and under his control and direction. See *Felker* v. *Emerson,* 17. Vt. 101.

The language of the Revised Statutes in relation to actions that survive, viz.—"for damages done to real and personal estate," we do not suppose is to be understood and applied literally and no farther; for if so, it must be limited to cases, where there has been an actual destruction or injury of the property itself,—which cannot be supposed to have been the meaning of the legislature;—and although the language may not admit of so large and extended a construction as the statute of 4 Edw. III, still we think it should be construed as liberally, as its language will admit, without forcing words beyond their fair and ordinary meaning.

In this case, then, the defendant held in his possession certain specific personal property, which the plaintiff had a legal right to have applied upon his debt; and whatever right the defendant had to hold the property, he held for the interest and benefit of the plaintiff. Under these circumstances, if the defendant neglected or refused to apply the property upon the plaintiff's execution, it operated as a direct pecuniary loss to the plaintiff; and although the plaintiff might not have such a right in the property, as to enable him to maintain trover against the officer, it seems apparent, that his act is so far a damage to the personal estate of the plaintiff, as to bring it entirely within the spirit, if not within the very letter, of the Revised Statutes;—and hence we think the cause of action in this case did survive to the plaintiff, as administrator.

The case of *Read* v. *Hatch,* 19 Pick. 47, which arose under the Revised Statutes of Massachusetts, (which are, in this respect, like our own,) was an action on the case against the defendant for fraudulently and falsely recommending a third person to the plaintiff as worthy of credit, whereby the plaintiff was induced to trust him with goods, which he lost. During the pendency of the action the defendant died, and the plaintiff moved to cite in his administrator. The court refused to grant the motion, upon the ground, that the cause of action did not survive; but the court say nothing in relation to any difference between their statute and that of 4 Edw. III. It

Cassedy v. Stockbridge.

deserves to be remarked, that in that case it did not appear, that any benefit accrued to the defendant's estate by the act complained of; and it is very doubtful, whether the action would have survived even under the English statute. In the case of *Manwell* v. *Briggs*, 17 Vt. 176, REDFIELD, J., in delivering the opinion of the court, in speaking of our statutes, in this particular, says, they are much the same as those of 4 Edw. III, c. 7.

In the present case we do not undertake to say, whether our statute is different from that of 4 Edw. III., and if it be, how far. We merely decide, that the present case comes within our statute, and the cause of action survived; and we think to hold the contrary would be to go directly counter to the intention of the legislature, and against the opinions and understanding, not only of the profession, but of the whole community, on this subject.

. The motion is therefore overruled.