SANBORN & CATLIN v. ELI CHITTENDEN.

*Jurisdiction.   Costs.   Bill of sale and parol testimony respecting it.*

Where the plaintiff, at the time of bringing his suit, expects to recover more than $100,00, but is defeated in his principal claim, so that his recovery is for less than $100,00, the county court is not thereby ousted of its jurisdiction of the action.

The county court may provide, by either a general or special rule, for the payment of money into court and the acceptance of it by the plaintiff at his peril in reference to the future costs.

And without a rule or the payment of money into court, the county court may, in their discretion, disallow the costs incurred by the plaintiff in the prosecution of a claim which he fails to establish, where he obtains a judgment in his favor upon other claims.

The plaintiffs gave B. & H. B. a bill of sale, absolute on its face, of a quantity of wool, upon the credit of which B. & H. B. proceeded to treat the wool as their own; and other parties acting upon the representations of the said B. & H. B. dealt with them as the owners by purchasing and attaching it, &c. *Held*, that under these circumstances, the plaintiffs could not show by parol testimony that the sale was only a conditional one.

TROVER for 5,000 pounds of wool and 25 wool-sacks. Plea, the general issue ; trial by jury, June Term, 1854, — POLAND, J., presiding.

Upon the trial it appeared that the plaintiffs, in June, 1848, shipped about forty-five sacks of wool, at St. Alban's Bay, to John Bradley & Co., wharfingers and forwarding merchants at Burlington, subject to the order of B. & H. Boynton, of Hinesburgh; that the defendant was the agent of John Bradley & Co., and had the care of their business on their wharf at Burlington ; that soon after the arrival of said wool at Burlington, one of the firm of B. & H. Boynton came ·and selected and sent to their factory in

Hinesburgh, all but twenty-one sacks, which he directed to be forwarded to Davis & Aubin, at Boston, Mass. These twenty-one sacks, Bradley & Co. shipped to Davis & Aubin, and started them for Boston, but before they had been taken out of the state, the defendant attached them on two writs in favor of John Bradley & Co, and one in favor of Vilas & Noyes, against the said Boyntons, and brought them back to Burlington and stored them for safe keeping in the storehouse of Bradley & Co.'s wharf, where within a few days afterwards, the plaintiffs demanded and the defendant refused to surrender them.

The defendant introduced a paper purporting to be a bill of sale of the whole of said wool from the plaintiffs to the said Boyntons, dated at the top, June 2, and at the bottom, June 11, 1848, which is recited in the statement of the case of *Davis & Aubin* v. *John Bradley & Co.*, 24 Vt. 56, which it was admitted was made and signed by the plaintiffs and sent by them to the said Boyntons, and that it referred to the same wool sued for. The plaintiffs then offered to prove that the contract between them and the Boyntons was made June 2, 1848, and was wholly by parol; that by the terms of it the plaintiffs were to sack the wool in their own sacks and send it to St. Albans Bay where it was to be shipped to Burlington, subject to the order of the Boyntons; that when the wool was all sent forward the plaintiffs were to send to the Boyntons a memorandum of the weight and price of the wool, for the purpose of enabling the Boyntons to know the amount for which they were to send their notes; that there was no written contract at the time of the contract sale, and no understanding that the contract was ever to be reduced to writing; that the wool was not to become the property of the Boyntons, but was to remain the property of the plaintiffs until the Boyntons sent to them notes for the wool secured by endorsers; that the plaintiffs, on the 11th day of June, made the writing produced and sent it to the Boyntons, as and for the memorandum of the amount and price of the wool which they were to send by the terms of the verbal contract, and not for the purpose of showing the terms of the contract. The defendant objected to this evidence and the court excluded it, to which the plaintiffs excepted.

The plaintiffs' evidence tended to show the said wool sacks to be

worth 50 cents each. The defendant admitted that the sacks were not purchased of plaintiffs by the Boyntons, and that they were to have been returned; but he insisted that the evidence did not show a conversion of the sacks by him so as to enable the plaintiffs to maintain trover for them, and he also moved to dismiss the cause, for the reason that the plaintiffs' evidence did not tend to show the value of the sacks to be but $11.50. The court refused to dismiss the action to which the defendant excepted.

The court submitted the evidence as to the conversion of the sacks by the defendant to the jury, with instructions that were not objected to by either party, and the jury returned a verdict for the plaintiffs for the value of the sacks and interest thereon, being $14.17.

The exceptions showed that upon the trial the defendant read in evidence the following papers, copies of which were not furnished to the reporter, viz: a receipt of Bradley & Co. for the twenty-one sacks of wool, dated June 13th, 1848; a letter, B. & H. Boynton to Davis & Aubin, dated June 11th, 1848; a letter from the same to the same, dated June 13th, 1848; three drafts drawn by B. & H. Boynton on Davis & Aubin and accepted by Davis & Aubin; also an account showing the acceptance and that the drafts had been accepted and entered thereon.

*A. O. Aldis*, for the plaintiff.

The parol evidence was admissible; it was not to contradict or explain a written contract, but to show that no written contract was ever made or to be made; and that the writing produced was not the contract, but only a memorandum provided for by the parol contract. *Edwards* v. *Golding*, 20 Vt. 30. 3 Stark. Ev. IV. 1015–1020.

The production of the paper by the defendant is not *prima facie* proof of its being a contract. He is not a party to it, and it is the mere admission of his adversary, which parol evidence is admissible to explain. 3 Stark. Ev. 1020.

The motion to dismiss for want of jurisdiction was properly overruled; the suit claimed in damages the sum of $3000.00 and was brought in good faith.

*B. H. Smalley,* for the defendant.

The plaintiffs having failed to introduce any legal evidence in support of their claim for the wool, are not entitled to recover for the bags. The plaintiffs' evidence, which was uncontradicted, showed their value to be but $11.50 and the rule of damages being the value of the property at the time of the conversion, and interest, the court will perceive that the damages could not in any event exceed $100,00 The action should therefore have been dismissed on the defendant's motion. *Putney* v. *Bellows,* 8 Vt. 272.

The parol evidence, offered by the plaintiff, to add to or contradict the bill of sale, was properly excluded by the court. *Davis & Aubin* v. *John Bradley & Co.,* 24 Vt. 55.

The opinion of the court was delivered by

REDFIELD, CH. J.   I.  A question is made in the case, in regard to the jurisdiction of the court, if the plaintiff failed in his principal claim.   We think it well settled that where the plaintiff at the time of bringing his suit, expects to recover more than $100.00, but is finally defeated in his principal claim, so as to reduce the recovery below that sum, the county court is not thereby ousted of its jurisdiction of the action.   It is scarcely needful to refer to authorities upon the point.   They are numerous and extend over a considerable portion of our judicial history.  *Ladd* v. *Hill,* 4 Vt. 164. *Manwell* v. *Briggs,* 17 Vt. 176.  *Henry* v. *Tilson,* 17 Vt. 479. *Joyal* v. *Barney,* 20 Vt. 154.  *Kittridge* v. *Rollins,* 12 Vt. 541. See also 1 Wash. Digest, 490.

No exceptions were taken in this case in regard to the taxation of costs.  We shall only need say, that we do not understand, that this rule, in regard to jurisdiction, involves the injustice, in relation to costs, alluded to in argument.  In many of the counties, the English rule upon the subject obtains as one of the standing rules of of the court, by which the defendant can pay money into court, under a rule that the plaintiff accept it and discontinue his suit, or proceed, at his peril.  This is is to cover all the costs of the suit, up to the time of paying the money into court, and a specified amount of the plaintiffs' claim, in the declaration.  And whether such a general rule exist, in the county court, or not, there can be no objection to granting such a rule, upon special application.  And

when such a rule is obtained, and the plaintiff proceeds and recovers no more than the sum paid into court, this court have held, that he cannot recover costs, after the date of the rule, and must pay costs to the other party.

And without such rule, or the payment of money into court, it is no doubt discretionary with the county court to disallow costs upon a a claim which failed to be established in court, as was held in the county of Chittenden at the last term. But without such a rule of court, I do not know any case which will warrant the court in allowing the defendants costs in that portion of the case upon which he prevails, which is the English rule of taxing costs, and, as it always seemed to me, the only equitable one, upon the subject.

II. The question of the admissibility of the oral evidence to control the bill of sale in this case has certainly been presented with great ingenuity and force on the part of the plaintiffs, and if the question did not affect any but the original parties to the contract, I think the admissibility of the evidence offered, might be fairly argued. It would certainly present a case, quite as strong, as many where the evidence has been received. The case of *Edwards* v. *Golding*, 20 Vt. 30 is not very different, in principle, I admit, from the present case. But there are certainly very learned cases justifying the exclusion of the parol evidence. And it is now beginning to be understood, that the cases upon this subject are not altogether reconcileable, upon strict principles, and that one is not, of course, an authority for another essentially differing in its facts. All that can be expected is an approximation towards consistency, in principle. But men's judgments are so various upon these matters, that it is impossible to effect anything like uniformity of opinion, in regard to what is consistency, in principle even.

But the present case is now peculiarly situated in many respects.

1. The plaintiffs gave, at the time they delivered the property to B. & A. Boynton, an absolute bill of sale of it, which, it is now said by their counsel, was a very unnecessary, ill-advised and negligent act. We fully concur in that opinion; and think it may be added, that it was a very singular mode of doing business, if the plaintiffs really relied upon retaining the title to the wool, as security for the price. If what they intended to do was merely to

inform B. & H. Boynton of the weight of the wool and the price, to enable them to send the stipulated security, it is wonderful they should have adopted the mode they did. But the case is supposable. It will sometimes happen.

2. The Boyntons have upon the credit and strength of this absolute bill of sale proceeded to treat the wool as their own, as by the terms of the bill of sale they well might.

3. And what is more important to this inquiry is that other parties have dealt with the Boyntons as the owners of this property; one has bought it and paid its full value, and another has attached it as their property. It does not expressly appear that these parties were led into this course by this bill of sale being known to them, but certainly they have acted upon the representations of the Boyntons, as to their ownership, and their representations were fully justified by a written contract then in their possession, signed by the plaintiffs. It might then be regarded as a grave inquiry, whether it should not estop the plaintiffs from showing that such was not the true state of the contract. Ordinarily one is estopped by such an admission upon which others have acted and drawn in third parties to make advances. If this bill of sale had been actually used as an instrument of inducing Davis & Aubin or Bradley & Co., to do as they have done, the one to buy the goods and pay for them, and the other to attach them, there could be no question, and if the Boyntons have acted upon this and induced others to act upon their representations of ownership, it practically amounts to the same thing. It is by no means certain if the plaintiffs had informed the Boyntons, that they should rely upon their title to the goods till they received satisfactory security, that they would have assumed to dispose of them as they did. The probability is certainly that they would not. And had they not treated the goods as their own, there is no probability Bradley & Co. would have attached them. And if this is even doubtful, shall the plaintiffs throw the risk of that doubt, which their own acknowledged negligence has raised, upon innocent parties? The law will not enable any one to thus visit the consequences of his own negligence upon innocent parties, if it is even doubtful as to the loss being the result of his negligence.

4. But finally, and what is far more conclusive than anything

else in the case, is, that the whole subject, in all its bearings, with an offer so precisely similar to the present, that it is difficult to find any important difference, has been before this court, where Davis & Aubin sought to hold the wool, and to recover it virtually of this same party, and the court, upon full consideration held that they were entitled to recover. And that decision seems to us to rest upon entirely satisfactory grounds. The other facts in that case and this are identical, except the offer of parol evidence, and that is the same in all its important facts. The instrument was then before the court, and we go to that case for our copy in this case. It is there called a "bill thereof," and here a "memorandum of the weight and price of the wool." But in both cases the contract is stated as being made on the 2d of June, and in parol, and that the bill or memorandum was to be sent after the wool was sorted and weighed. And this bill of sale from its date and the transaction, seems to have been sent on the 11th of June. In both cases, taking the offer into the account, it appears that this was the act of the vendors alone, and that it did not express fully the terms of the actual contract between the parties. And the difference is substantially the same in both cases. And the court have held that it is not competent to defeat the title derived from the Boyntons through this bill of sale by such oral evidence. And upon the strength of that determination Davis & Aubin have recovered the value of this same wool of Bradley & Co. on whose behalf this defendant refused to deliver the same to the plaintiffs, and who will be liable to protect him for so doing.

So that if we now hold the bill of sale impeachable, by this same kind of evidence, the result may be to compel one party to the former suit to pay for the same property twice over, which is a more obvious bad result of want of uniformity in decisions, in regard to property, than ordinarily occurs, but the same in principle, which applies to all. We should not therefore, feel willing to depart from the former decision, upon substantially the same state of facts, even if we had doubts, as to its possible soundness, which we have not. We think therefore the judgment must be affirmed.