FIRST NATIONAL BANK OF BRANDON *vs.* F. E. BRIGGS'S
ESTATE.

May Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, MUNSON and START, JJ.

*Survival of Actions—Cashier Liable for Appropriation of Funds—*
*Negotiable Paper—Notarial Certificate as Evidence of Notice—V. S.*
*2310 Interpreted.*

If claims in favor of a bank are lost through the neglect of its cashier to
perform his duty, the cause of action arising therefrom dies with the
cashier and cannot be enforced against his estate.

If the cashier of a bank takes from his creditor receipted bills of the
indebtedness, agreeing to deposit the amount to his credit in the bank,
and thereupon, without either making the deposit or giving the credit,
pays his creditor's draft from the funds of the bank, he is liable as for an
appropriation of its funds to his own use, and the claim survives
against his estate.

A notary's certificate is not, by common law, evidence that notice of
dishonor has been given to the drawer or endorser.

V. S. 2310, providing that a notarial certificate of non-payment, protest
and notice of dishonor of a negotiable note, inland bill, draft or check
shall be evidence of the fact of non-payment, protest and notice, applies
only to protests within this State.

A notary's certificate of non-payment, protest and notice, made without
this State, is not evidence that notice was given to the drawer or
indorser, in the absence of proof of the law of the state where the
protest was made.  What effect the law of the place might have, if
proven, is not considered.

APPEAL from probate.  Upon the report of a referee at the
September Term, 1897, Rutland County, *Ross*, C. J.,
presiding, a *pro-forma* judgment was rendered for the
plaintiff, to which the defendant excepted.

*Stewart & Wilds* and *Ormsbee & Briggs* for the defendant.

*Joel C. Baker* and *E. S. Marsh* for the plaintiff.

Ross, C. J.  (1)  The intestate was cashier of the plaintiff
bank.  The bank seeks to charge his estate with claims

numbered thirty-two, thirty-five, forty-four, and seventy, on the ground that the intestate failed faithfully to discharge his duty to it as cashier. All these claims except the one numbered seventy are represented by notes. On none of them except thirty-five was the intestate a party to the note, as maker, indorser, or otherwise. It is found that the intestate entered thirty-two and forty-four on the loan and discount accounts of the bank, but did not present them to the directors for approval before they were discounted. This is the only neglect of duty reported. It is not specifically found that it was his duty to have presented them to the directors for discount. The intestate in no way profited by the discount of these notes.

The intestate was a member of the firm which was the maker of note thirty-five. The same has become barred by the statute of limitations. It is found that it was the duty of the intestate to keep the same current, and this is the only ground claimed for charging his estate with its payment. Seventy is for an overdraft of the private account of one Bliss. It is found that the overdrawing continued for over five months. Deposits were made in the meantime, so that the amount overdrawn fluctuated from time to time. Bliss was worthless and his financial reputation bad. It is not found that the overdrawing was unauthorized by, nor unknown to, the directors. The liability of the estate for this, as for the notes already named, rests upon the failure or neglect of the intestate to discharge his duty to the bank as its cashier, if he was under a duty in these respects.

In regard to some of these claims it is not found what the duty of the intestate was, which he neglected to perform, nor is it found that these claims were lost to the bank through his neglect to discharge any specific duty. Assuming that these claims were lost in whole or in part by the intestate's neglect to perform a duty which devolved upon him by virtue of his office of cashier, such neglects

were torts which are not made to survive by the statute, and which died with the intestate.    *Winhall* v. *Sawyer*, 45 Vt. 466; *Dana* v. *Lull*, 21 Vt. 383: Schouler's Executors and Administrators, § 370; *Franklin* v. *Low*, 1 Johns. 396; *Witters* v. *Foster*, 26 Fed. Rep. 737; *Boston & Maine R. R.* v. *Graves*, 80 Fed. Rep. 588.

(2) Seventy-one is for an overdraft by C. W. Briggs, a brother of the intestate, made by the brother and allowed by the intestate under these circumstances:    The intestate was owing C. W. Briggs more than the amount of the overdraft.    Before the overdraft C. W. Briggs agreed with the intestate that the intestate should deposit to his account with the bank the amount of such indebtedness, and gave him the bills of the indebtedness receipted.    C. W. Briggs thereupon made the draft and the intestate paid it from the funds of the bank, but did not credit C. W. Briggs's account, nor deposit to his account, the indebtedness which had been receipted to him by C. W. Briggs.    Under these circumstances it is manifest that it is the duty of the intestate, as between him and C. W. Briggs, to pay the amount of this overdraft to the plaintiff, that C. W. Briggs had furnished the intestate with funds which, between them, was to be used to furnish a fund on which this draft was made and from which it was to be paid.    Under the circumstance the payment by the intestate of this draft from the funds of the bank, was as between him and C. W. Briggs, an appropriation of so much of the funds of the bank to the use and benefit of the intestate.    This claim should be allowed against the estate of the intestate.

(3) The other claims contested by the estate are five promissory notes executed and payable on time, without this State, indorsed by the intestate and discounted by the plaintiff.    They were all presented for payment at the places where made payable and there duly protested for non-payment.    The records of the protest attached to the several notes state that the notary making the protest duly and

seasonably forwarded by mail to the intestate notice of the dishonor of the note. If this statement of the notary in the certificate of protest is competent evidence from which to find that the intestate was duly notified of the dishonor of these notes, the referee finds that the intestate was duly notified and that his estate is liable for their payment. He submits whether the statement in the certificate is competent evidence from which to find that the intestate was duly notified of the dishonor of these notes.

By V. S. 2310 a negotiable promissory note, inland bill of exchange, draft or check may be officially protested for non-payment by a notary public, and notice thereof to the parties to the instrument may be given by such notary as in case of a foreign bill of exchange; and the certificate of such notary, under his hand and official seal, is made evidence of such protest, non-payment and notice, as in case of a foreign bill of exchange. This is applicable only to protests within this State. It does not authorize the giving of notice by a notary in protests made without the State, nor make his certificate evidence that he gave notice. The operative force of such protests, made in other states, depends upon the laws of such states. At the common law the certificate of the notary, by a custom arising from necessity, was competent evidence to show demand, non-payment and protest of a foreign bill of exchange, but not of notice of dishonor. Whether notice of dishonor was duly received by the party to be charged could generally be shown otherwise, and there was no necessity for making the notarial certificate evidence of such fact. Hence the notarial certificates attached to these notes, by the common law are not competent evidence to show notice of their dishonor to the intestate. No other evidence of notice of dishonor was introduced before the referee. The notarial certificates were not competent evidence to prove such notice to the intestate, either by the common law or by V. S. 2310. What might have been the effect of such certificates to prove notice

of dishonor to the intestate, if it had been shown that the law of the states where the protests were made authorized the notary to give such notice and made his certificate evidence of giving such notice, is not raised, nor considered. There was no competent evidence before the referee from which to find that the intestate was duly notified of dishonor of these notes. Hence his estate is not liable for their payment.

> *Judgment reversed, and judgment for the plaintiff for the amount allowed absolutely by the referee, increased by amount of overdraft numbered seventy-one. Judgment to be certified to the probate court.*