# Gilchrist *against* Rogers.

It is error to submit evidence to a jury with instruction that they may infer a promise to pay, when no such inference can legally arise from it.

ERROR to the Common Pleas of *Crawford* county.

Daniel Rogers against John Gilchrist.   This was an action on the case in *assumpsit*, the facts of which are sufficiently stated in the opinions delivered:

*Derrickson* for the plaintiff in error.
*Riddle* for the defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The plaintiff in error, who was the defendant in the court below, was a contractor for making a section on the Erie extension of the Pennsylvania Canal, at or near Hartstown, in Crawford county, and in March 1839 sub-let the making of it to a Niel O'Donnell, who employed hands for the purpose of doing the work, among whom was the defendant ·in error, to whom, on settlement, there was a balance of $47 or $48 coming from O'Donnell.   The defendant in error brought this action against the plaintiff in error for the purpose of recovering this balance, alleging that the plaintiff in error had by his undertaking and conduct rendered himself liable to pay it.   On the trial of the cause evidence was given by the plaintiff below tending to prove that while he and others were engaged in working on the section under the employment of O'Donnell, O'Donnell seemed not to be attending to the matter very closely, and was not paying the hands, or at least some of them, as they wished: that the defendant below was spoken to by some of them on the subject, but not by the plaintiff; that upon being spoken to, he said he would draw the estimate, that is, the money for the work done, as it progressed, from the State, and it should not go out of his hands until every debt against the section was paid; that he would apply the estimate towards payment of the debts against the section, and that O'Donnell should not handle a dollar of it until the hands were paid; that this was told to the plaintiff below among others; that the

[Gilchrist v. Rogers.]

defendant below said he would take the work into his own hands; that this, however, he did not do until after the plaintiff had quit work and his claim had accrued, when the superintendent of the work on the part of the State, interfered, and required the defendant below to do so, otherwise he would declare the section aban doned, and relet it. Evidence was also given going to show that the defendant below had expressly agreed to pay some of the hands for their work done on the section under O'Donnell, if they would get orders from O'Donnell directing him to do so; but nothing of the kind was shown in favour of the plaintiff below, or that the defendant below would pay him in any way whatever, unless it were that he would draw the estimates made on O'Donnell's work and would not pay over to him anything until the hands who worked for him on the section were first paid out of the estimates. Evidence was also given, on the part of the defendant below, showing that he had paid out all the moneys received by him on the estimates in discharge of debts owing by O'Donnell for work done, or claims against him on account of the section, which does not appear to have been repudiated or contradicted. Yet under this state of the evidence the court below instructed the jury, " that if the defendant below found that O'Donnell was unable to continue the work in June, and he took the work into his own hands, and carried it on himself, as is testified to by Newton, he would be bound to pay the hands, who continued to work on the job, although they were hired by Neil O'Donnell, who at that time superintended the work; and in that event O'Donnell would be considered as the defendant's agent, and he would be bound to pay the hands, although he did not personally make any agreement with them to do so. Or if after O'Donnell failed in June, the defendant's acts and declarations were such as to induce ordinary men to believe that the work was carried on by himself, and at his expense, and the plaintiff from those acts and declarations did believe so, and continued to work in consequence thereof, the defendant would be bound to pay him."

Now it appears to us that the court below, in submitting the case to the jury, have given a colouring to it in favour of the plaintiff, which is not warranted or supported by the evidence. We can perceive no evidence tending to prove that the defendant below, in the month of June, took the work of the section into his own hands, and carried it on himself, nor does Newton testify, as the court say to the jury, that he did, nor to anything from which such a deduction could be fairly made by the jury. Neither does evidence appear to have been given of any acts and declarations done and made by the defendant below, which could or ought to have induced any man to believe that the work of making the section was carrying on by himself and at his expense, and in such a manner as to render him liable to the plaintiff below for his work done under his contract made with O'Donnell, whatever the

VI. — 62

[Gilchrist v. Rogers.]

plaintiff below may have thought of the acts and declarations of the defendant. The whole of the evidence given by the plaintiff below, was extremely loose and unsatisfactory at best, and such as by no means justified the court in submitting the liability of the defendant to the plaintiff on the grounds that they did. It was leaving it to the jury to place the liability of the defendant to pay for the work done, upon facts which the evidence in no wise tended to prove or establish; which was clearly error. The judgment is therefore reversed, and a *venire de novo* awarded.

HUSTON, J. (dissenting).—It sometimes happens that the opinion of the law as applied to a case given by the judge below is reversed, because a different view of the facts is taken here from what struck the judge who saw and heard the testimony. This also happens from the fact that all the testimony given at the trial is not spread on the paper-book given to us. From the indolence of counsel, the preparing the testimony to be attached to the record is left to him who takes the writ of error. The opposing counsel neglects to examine it, and the judge signs it supposing it to have been examined by the opposite counsel, and to be correct; and more than this, all which is sent up with the record is not put on the paper-book, or some note or memorandum on it is omitted. In this case these words " defendant also gave evidence of the amount he had paid out, and the state of his accounts with O'Donnell, which were referred to the jury," were not on the paper-book, and no doubt were omitted as immaterial, yet led this court to consider matters as having been submitted to the jury on which no evidence had been given. An acknowledged and palpable error in the copy of the charge led me to examine the whole record; and a careful perusal has convinced me that the case is not before us as it appeared in the court below. On the same view of the facts I do not know that I would not agree with the opinion delivered; but I do not view the facts, or fair inferences from the facts, as they have appeared to the other judges. I believe the view taken by the president entirely correct as to the facts and the law.

The defendant below entered into a contract to make section 62 of the Erie canal ; this was in the fall of 1838. We have not the date, nor any evidence of what he had done; but we know that 15 per cent. on all his estimates was retained until the completion of the work. On the 22d March 1839, Gilchrist underlet to Niel O'Donnell, reserving to himself 20 per cent. as security until the final estimate was made, out of which he was to receive $500, and retain it unless previously paid, also retaining the right to the 15 per cent. retained on the grubbing, excavation and embankment done in 1838 ; O'Donnell to complete the contract and receive the future pay. We have not the contract at large between them, but a short abstract. The judge in his charge states that Gil-

christ reserved to himself the right to draw all the estimates. Gilchrist then had a deep interest in having this contract completed, and had taken no little precaution to keep himself safe. An estimate was paid in June, and it would seem Gilchrist had drawn that. Soon after this O'Donnell went off to Butler. Newton, a store-keeper, who had trusted him, followed him and brought him back—arrested him. "After this he came to my store; I refused to let O'Donnell have goods unless defendant would be security. Gilchrist told me to let him have goods and charge them to him direct; that he would draw the estimate and it should not go out of his hands till every debt against that section was discharged." He understood Gilchrist to say O'Donnell would still continue to superintend the job. This information witness stated he communicated to Rogers the plaintiff, and some other hands the same day. He also stated that Killan, the clerk, and O'Donnell, drew orders in favour of the hands, which Gilchrist paid, and his son got things for the boarding-house for the hands; but he fixes no dates for these things. Now it is possible at another trial to fix dates by his books, &c.

Another witness was told by Gilchrist about six weeks before the October estimate, that he would draw the next estimate and apply it to the debts of the section; that the hands should be paid. To James Wright he said he would pay the hands; O'Donnell should not handle a dollar until they were paid.

Killan, the clerk, proved the plaintiff's demand. He proves that the plaintiff promised to pay him, the witness, and Farly O'Donnel. Witness had a pass-book, and got what things he wanted at the stores on the credit of Gilchrist; the hands got some pay out of the stores.

M'Bride swore he was a hand on section 62; the defendant was going backward and forward giving orders as contractors usually do; told O'Donnell to discharge hands when they would not do as ordered, and send them to him and he would pay them. At one time the hands quit for fear of their pay, and Farly O'Donnel, the boss, went to defendant, and came back and set them to work again. Witness was refused feed at the store; defendant gave an order and he got feed.

Farly O'Donnel relates that the hands quit and he went to the defendant who promised to pay him; told him he would not pay any money to Niel O'Donnell till the hands were paid; he told this to the hands and they went to work. But we have no dates given by any of these witnesses. M'Fann testified that at the June estimate he had an account against O'Donnell, who gave an order on Gilchrist, who paid him; after this he did not trust O'Donnell, but gave goods to the hands and charged them to Gilchrist, who paid him.

To judge of this case we must look at the situation of the parties. The engagements of Gilchrist, if he made any, to pay the

[Gilchrist v. Rogers.]

hands, were not made by a stranger who had no interest and who was to derive no benefit, but by one at least as deeply interested as O'Donnel. Where twenty or more hands are at work on such a job, several come at one time, and what is said to them all is said to each; and often where a difficulty arises, what is said to one is said to all, though not all present. When he told Newton he would take the job into his own hands and carry it on himself, to charge himself direct for goods sold to the hands, that O'Donnel would still superintend, and this was told the same day to the plaintiff and others; when he told several others that he would draw the estimates and pay every debt on the section, and to some that the workmen should be paid first, and paid orders to those hands who wanted and orders to storekeepers, these sayings and doings would be known to all, understood as applying to all, any jury would be justifiable in so understanding them; but when all quit and he told the clerk and the boss that he would draw estimates and pay, and this was to be told to the men, and they began work, this was a direct contract with all and with each. At the next trial the dates of these declarations can and I suppose will be ascertained. For as I understand the counsel, it is admitted that Gilchrist is liable from the time he distinctly assumed the work; as to when, they differ from June to October. The jury were referred to his acts and declarations, and told to say whether the plaintiff did continue in consequence of them, and if they were such as to justify him in so considering them, they ought to find for the plaintiff. But some witnesses had stated what he said to them was, that he would pay all the estimate to the debts of the section, and the defendant's counsel asked the court to state the law if the jury believed this was the extent of his engagement. To this the court said, "but if the jury believe from all the evidence, the defendant was only to pay the hands what money was left after paying the debts against the job, which he had assumed to pay in order to have the work progress, then the jury will ascertain whether the defendant has in his hands money after making those payments, and if he has not, then verdict should be for the defendant; if he has, it should be for the plaintiff for the balance due for his work, if the defendant has that much left in his hands." This last sentence is copied from the judge's charge. It was unintelligible in the paper-book. After the most deliberate consideration and reconsideration, I can see no error in the view taken of the cause and the evidence, or in the law as stated to the jury, and I would affirm the judgment.

The fact that Gilchrist was to draw all the estimates has an important bearing on this cause. The man who is to pay generally receives the fund which he is to distribute. If so unusual a business, as that one was to hire and another to receive all money earned, and pay, it ought to have been known to the men hired, and unless made known to them I doubt its fairness and legality;

[Gilchrist v. Rogers.]

at all events a small assumption would bind such receiver of the estimate to pay those who earned it; his payment to one or several would be evidence to be left to a jury of his liability to all; nothing but an express understanding among all the labourers would leave him at liberty to pay one-fourth or even half the workmen, and get the labour of the others for nothing. I would consider the direction to Newton and M'Fann, the store-keepers, as intended to be communicated to the hands as they must be, and as intended to induce the hands to continue, as sufficient evidence to charge a person situated as Gilchrist was, for all work after the first of those orders. The subsequent directions were only repetitions of it. The time when these several declarations and orders by Gilchrist were made, is material : if soon after the June estimate, it is one thing; if not for months after, another; and the date of the October estimate is material. The October estimate of $1550, and the 15 per cent. on it retained, were earned by the labour of this man and others. Gilchrist has drawn the estimate and the 15 per cent. I can see no principle of law or justice which will enable him to retain any part of what the hands earned, even if the jury disbelieve the testimony of repeated express promises made by him.

Judgment reversed, and a *venire de novo* awarded.