# Hood *versus* Hood.

1. The admission of improper evidence is no cause for reversing a judgment, if the court afterwards peremptorily instruct the jury, that it is insufficient to establish the fact for which it was given.

2. A defendant in ejectment, may prove his own act of taking possession, to show its character and extent, as well as his purpose in doing so, as the same was at the time manifest, from his own concurrent declarations.

3. Declarations, by a defendant in ejectment, relative to the fact and objects of his taking possession, are only competent, because and when they are co-temporaneous with the act itself, and so immediately connected with it, as to illustrate its true character, with reasonable certainty.

4. Declarations, by a defendant in ejectment, relative to the fact and objects of his taking possession, in the nature of a narrative of a past occurrence, cannot be received as evidence of such occurrence.

5. It is incompetent, for a defendant in ejectment, to show, by the declarations of his ancestor, the circumstances of his previous possession, but may show, by proof of his declarations, how, and what he claimed, at the time of his speaking.

6. The entries in the minute book, of a former trial in ejectment between the same parties, are not competent evidence, for the purpose of showing who were the jurors, the length of time occupied in the trial, the verdict, and the whole proceedings of the trial.

7. A previous verdict and judgment, for defendants, in an ejectment, is competent evidence on a subsequent trial.

8. If points are distinctly propounded, and are pertinent and material to the issue, and legitimately arise from any portion of the evidence in the cause, direct and unequivocal answers must be given.

9. Any material omission or evasion whatever, directly or indirectly, to answer material and distinctly propounded points, by way of argument or otherwise, or a want of reasonable precision and distinctness in the answer, will be treated as error, except where a negative would have been proper.

10. A party has a right to demand specific instruction, on a point framed by him, to meet any legitimate hypothesis that arises out of any given portion of the testimony he may consider reliable, isolated from and independent of what he considers not so.

11. The burden of clear and definite affirmative proof, of all essential requisites to maintain title, is thrown upon the party who sets it up under the Statute of Limitations, against a legal title in writing, which is otherwise good and perfect.

12. Whenever the possession of one person is shown to have once been in subordination to the title of another, it will not be adjudged afterwards, adverse to such title, without clear and positive proof of its having distinctly become so.

[Hood *v.* Hood.]

13. Every presumption is in favor of possession continuing in the same subordination to a title, where it is once shown to exist.

14. The Statute of Limitations will not begin to run, until the possession becomes adverse by some decisive acts or declarations, showing the same to have become hostile; done or made in such manner, and under such circumstances, as to leave no doubt on the minds of the jury, that they were brought home to the knowledge of the party to be charged, or his agent, if he had any.

15. It is no ground, in general, for reversal, that in answering the points the court have omitted observations, by way of application or explanation, that might have been very properly made, but which have not been specially required on the trial.

16. Where the holder of the legal title to land, caused the premises in dispute to be surveyed on the ground, and a conditional line to be established between the tract in dispute and the adjoining one, in the presence, and with the knowledge of the person claiming under the Statute of Limitations, and without objection on his part, it in law, constitutes such an entry and exercise of ownership over the premises, as stops the running of the Statute of Limitations.

17. A possession for less than twenty-one years, is not sufficient to create a title, under the Statute of Limitations.

18. It is error to permit a jury to pass upon matter of alleged fact, without evidence, or to submit evidence to a jury, or instructions that they may infer a given fact, when such inference cannot legally arise from it.

19. A former verdict and judgment, in ejectment, between the same parties, is persuasive evidence in favor of the party obtaining the same, and should be so considered by the jury.

ERROR to the District Court of *Allegheny county.*

This was a second ejectment, brought by Eliza Hood, acting executrix of John M. Hood, of Philadelphia, deceased, against Mary Hood, *et al.,* heirs-at-law of M'Clelland Hood, deceased, for a tract of land known as "Safe Landing," situated in Ohio township, Allegheny county, containing 226 acres.

The judgment for defendants, rendered in the former trial, was affirmed by the Supreme Court. See 1 Casey, 417.

John M. Hood and M'Clelland Hood, were brothers. Plaintiff showed a regular chain of title in John M. Hood, as early as 1808, and offered his will, probated 20th June, 1848, authorizing his executors to sell and dispose of all his real estate.

Defendants alleged, first, That although the deed was in John M'Clelland Hood's name, he held in trust for M'Clelland Hood. 2d. That this land was a gift from John M. Hood, to M'Clelland. 3d. That the defendants had a title by the Statute of Limitations. The case was tried before HAMPTON, P. J.

To show title under the Statute of Limitations, defendants proved possession, and improvements made by their ancestor, from the time he entered, about 1808 until 1822, when he moved to Montgomery county, where he remained two years, and then returned and moved on the land again, and resided there till his death, in 1846. During his absence, the place was occupied by John Baldwin, whom both parties claim as their tenant.

The testimony was voluminous, and somewhat conflicting. Enough of it for an understanding of the case, and the points raised, may be gleaned from specifications of error given below,

[Hood *v.* Hood.]

the opinion of the court, and the report of the former case in 1 Casey.   The verdict, as before, was for defendants ; and plaintiff sued out this writ of error.

Among the specifications of error, were the following, which are referred to in the opinion of the court, but not recited therein :—

" 6. The court erred in permitting the defendants to read to the jury, as evidence, the entries in the minute book of the former trial, between the same parties, for the purpose of showing who were the jurors, the length of time occupied in the trial, and the verdict, and the whole proceedings at the trial.

" 11.  The court erred in refusing to charge the jury, as requested by plaintiff, in her 10th point, to wit, 'If the jury believe from the evidence, that John M. Hood, or his agent, Hugh Davis, in 1828, caused the premises in dispute to be surveyed on the ground, and a conditional line to be established between the tract in dispute and the adjoining one, in the presence, or with the knowledge of M'Clelland Hood, and without objection on his part, it would, in law, constitute such an entry and exercise of ownership over the premises, as would stop the running of the Statute of Limitations.'   And in answer thereto, charging as follows : ' If M'Clelland Hood's possession was adverse to the legal title of John, and a dispute arose between him and Boggs, about the division line, and if Davis was sent by John, at the request of M'Clelland, to have that line surveyed and settled, and not for the purpose of regaining the actual possession of the land for John, or interfering with M'Clelland's possession, then that alleged survey, whether made in 1828, or at any other time, would not stop the running of the statute, and M'Clelland's title would be complete in twenty-one years from the time his adverse possession commenced.'

" 12.  The court erred in refusing to charge the jury, as requested by plaintiff in her 11th point, to wit, ' If the jury believe the facts stated in the foregoing proposition, and if they also believe, that John M. Hood acquired the possession of the property, or any part thereof, at any time within twenty-one years, counting from the survey made in 1828, then the defendants have no title, as against the plaintiff, and she is entitled to recover.'

" 13. The court erred in refusing to charge the jury, as requested by plaintiff in her 12th point, to wit, ' If the jury believe from the evidence, that John M. Hood conveyed a portion of the premises in dispute, to David Hood, in 1830, or at any other time subsequently, and that the same was measured off in the presence, or with the knowledge of M'Clelland Hood, and without objection by him, it was such a claim and exercise of ownership, to and over the entire premises, as would stop the running

[Hood v. Hood.]

of the Statute of Limitations.' And in affirming said point, with the following qualification : 'But if M'Clelland was giving this eight acres to David, the survey by John, or his agents, would not bar or stop the running of the statute.'

"16. The court erred in affirming defendants' 11th point, namely, that the former verdict and judgment, between the said parties, is persuasive evidence in favor of the defendants, and should be so considered by the jury."

*Hamilton* and *Shaler*, for plaintiff in error, referred to 1 Greenleaf on Ev. 277–280 ; *Jackson* v. *M' Very*, 18 Johns. 330 ; *Brandt* v. *Klein*, 17 Id. 335 ; 9 Met. 418 ; *Nichols* v. *M'Farland*, 3 Watts, 165 ; *Denn ex dem.* v. *Fearnside*, 1 Wilson, R. 176 ; *Sailor* v. *Hertzog*, 2 Barr, 184 ; *Creswell* v. *Altemus*, 7. Watts, 581 ; *Ingersoll* v. *Lewis*, 1 Jones, 220 ; *Long* v. *Mast*, Ib. 195 ; *Zellers' Lessee* v. *Eckert and others*, 4 How. 289, 296 ; *Turner* v. *Done*, 9 Exchequer R. 643 ; *M'Cracken* v. *Roberts*, 7 Har. 290 ; *Hoopos et al.* v. *Garven*, 3 Id. 525 ; *Miller* v. *Shaw*, 7 Watts, 129.

*Hepburn*, *Woods* and *Knox*, for defendants in error.—*As to the character of the entry that will stop the running of the statute.*

Where the intent of the entry is doubtful, the court must refer its character to the jury. 7 S. & R. 129.

*The character of the entry is to be ascertained by the intent.*

" If Bastard invite the Mulier to his house, to dine or hunt, &c., on the land, this is no interruption, because by consent of Bastard, and therefore no trespass. But if Mulier cometh of his *own head,* and cutteth a tree, this is an entry." Coke's Littleton, 245, b.

An entry must bear on the face of it an unequivocal *intent* to resume the *actual* possession. 9 Watts, 30.

Where the agent of the owner enters upon land, with the *avowed* object of claiming it, making a survey thereof, with the knowledge and assent of the person in possession, these acts operate to bar the running of the statute, and if the proof of them be satisfactory to the jury, the court should give a binding direction to that effect. 1 Jones, 212.

*As to the kind of notice to, or knowledge by the owner, of the hostile possession.*

Payment of taxes, accompanied by actual occupancy for twenty-one years, is equivalent to an actual ouster. 10 Watts, 142.

The character of adverse possession is given, not by proving *notice,* but by the *nature* of the acts done. 6 Barr, 227 ; 2 W. & S. 318.

Where tenant in common enters, and takes the profits, and

[Hood v. Hood.]

claims the whole land, for twenty-one years, the jury ought to presume an actual ouster, though none be proved.   10 S. & R. 188.

If the owner omit to pay any taxes for twenty-one years,— and one in the possession, who has no title, pays them,—it is a confession of ouster; for a man, without *actual* confession of ouster, may show by his *conduct* that he considers himself out of possession.   10 S. & R. 306.

A man may *come in* by right, and yet hold over *adversely*,— and if thirty-six years of actual possession, by tenant in common, be proved, a jury may presume *actual* ouster of his co-tenant. *Fisher* v. *Proser*, Cowper, 218.

No *express* declaration, by tenant in common, of an *exclusive* claim, is necessary, and the time is now reduced to twenty-one years.   1 Watts & S. 191; 6 Barr, 225.

No bill of exception lies to rulings of court, with regard to preliminary proof, to lay the foundation for secondary evidence of contents of papers.   4 Barr, 427.

If error is not the subject of review, it is no error.   5 Casey, 247.

When no injury is done by illegal evidence, the court will not reverse.   5 Casey, 496.

If illegal evidence be admitted, yet, if in the charge such instructions be given, as render it reasonably certain, that the jury did not base their verdict on it, the court will not reverse. 5 Casey, 479.

All declarations of claimant under the statute, regarding his claim, are evidence.   2 Casey, 493; Ib. 521; 6 Id. 507; 8 Watts & S. 136.

Former verdict and judgment, persuasive evidence.   4 Casey, 66.

The opinion of the court was delivered by

CHURCH, J.—The court below very properly ruled adversely to the alleged trust.   The evidence was clearly insufficient to support that character of defence.   Hence the only questions in this court, arise out of the charge to the jury, touching the title set up under the Statute of Limitations, and upon the exceptions taken by the plaintiff to evidence admitted in the trial, on the same subject.   These latter will be discussed first.

The portions of the deposition of Richardson, considered inadmissible, relate specially to the question of trust, but the court having peremptorily instructed the jury that this branch of the defence was not established, by the evidence in the cause, there would scarcely be propriety in reversing the judgment on this account.   And some of the principles involved in the exceptions covered by the second, third, fourth and fifth specifications of

[Hood *v.* Hood.]

error, could be disposed of here in like manner, but for others embraced in them having relation to the question upon the statute, and which consequently demand further notice and attention. It is an undoubted principle of evidence, that a defendant in ejectment may prove his own act of taking possession to show its character and extent, as well as his intention and object or purpose in doing so, as the same was at the time manifest from his own concurrent declarations; on the principle that they form an essential part of the act—the *res gestæ*. But it is a well settled elementary doctrine, that such declarations are only competent because and when they are contemporaneous with the act itself, and so immediately connected with it as to illustrate its true character with reasonable certainty. And, therefore, it is obvious, that declarations in the nature of a narrative of a past occurrence, cannot be received as evidence of such occurrence. 1 Stark. Ev. 302, 303; 1 Green. Ev. §§ 108, 110; *Tompkins* v. *Saltmarsh*, 14 S. & R. 280; *Enos* v. *Tuttle*, 3 Conn. Rep. 250. The admission, by the court below, of the testimony of the witnesses Luster, Boggs and Hiley, as the same appears in the exceptions and specifications of error, was a violation of these rules and principles of evidence. It was incompetent for the defendants to show, by the declarations of their ancestor, the circumstances of his previous possession. How and what he claimed and held then, at the time of his speaking, was the most they could thus be permitted to prove. The evidence received was beyond this limit.

That the previous verdict and judgment for the defendants was competent evidence for them, there could be no doubt. *Koons* v. *Hartman*, 7 W. 20, and *Levers* v. *Van Buskirk*, 4 Barr, 309, are authorities for it. But it was inadmissible for those purposes that are indicated in the sixth specification of error. The evidence, however, does not very distinctly appear to have been received, or the use of it by counsel permitted by the court, for any such purpose. The plaintiff's paper book is defective in this respect. And the allegation is denied by defendants; consequently the court would not reverse for an error depending on such an uncertainty as arises here.

The seventh specification of error, is neither in form nor substance, presented according to the rules of court, (6 Har. 578,) nor can it be otherwise rendered very intelligible. And the defendants having taken advantage of this defect or omission, the question supposed to be embraced in it will not be discussed. It is not, however, very probable that defendants can evade the effect of the rule upon them to produce these letters, by any such subterfuge as indicated by plaintiff. The character of the counsel concerned is such as to preclude all suspicion that he is involved in, or privy to any transaction of the kind.

[Hood *v.* Hood.]

And now we come to the consideration of the questions presented by the several specifications or assignments of error to the charge of the court in answer to plaintiff's points. In the trial of complicated causes before a jury, there may as much error sometimes result from the manner, as from the matter of the charge of the court. The former, however, can seldom be the subject of review and correction here. But the latter is easily re-examined and controlled, by the practice of proposing points of law to the court, for instruction to the jury. And if these points, distinctly propounded, are pertinent, and material to the issue or questions involved, and legitimately arise from any portion of the evidence in the cause, direct and unequivocal answers must be given. Any material omission or evasion whatever, directly or indirectly, by way of argument, or otherwise, or a want of reasonable precision and distinctness in the answer, will be treated as error, except where a negative would have been proper. These views are supported, both by sound reason and an unbroken chain of authority. *Brown* v. *Campbell*, 1 S. & R. 176, 178; *Shaeffer* v. *Landis*, Ib. 449; *Smith* v. *Thompson*, 2 Id. 49; *Powers* v. *McFarren*, Ib. 44; *Hamilton* v. *Menor*, Ib. 70; *Vincent* v. *Huff*, 4 Id. 298; *Slaymaker* v. *St. John*, 5 W. 27; *Noble* v. *McClintock*, 6 W. & S. 58; *Kitchen* v. *Deardorf*, 2 Barr, 481. In our peculiar method and form of trial, wherein the verdict of a jury may be, in effect, decisive of the law and facts both, we shall have no settled rules whatever, but become a lawless people indeed, unless these two departments be kept so entirely separate and distinct, that the former may be fairly and definitely brought before the superior tribunal. Very careful attention, therefore, by the courts, to this rule of law, is of the utmost importance. And unless this court demand a strict practical adherence to it, there will be neither security for property, nor certainty in the administration of justice.

The general principles of law, announced by the court, are not so obnoxious to criticism, nor subject to so much ground of complaint here, as the manner and connections with which these principles were enunciated, in answering the plaintiff's points. This latter forms, indeed, the principal material substance of nearly all the errors assigned to the charge. The eighth specification of error, may be taken as a fair illustration. The proposition in the point was very clearly and distinctly presented, that whether the original, or subsequent entry of the defendant's ancestor was, with the consent of, and under, plaintiff's testator and devisor, was a question of fact for the jury; and if they should find he did so enter into possession, his subsequent declarations of ownership, payment of taxes, and making the kind of improvements he did on it, taken singly or collec-

tively, were insufficient in law to confer a title, under the Statute of Limitations.   This was certainly a distinct legal proposition, pertinent to the case.    But the court seem to have treated it as a matter of fact alone, and as such, submitted the question to the jury, under the instructions given in the general charge, to determine "the character of the possession under all the evidence of the case."

After a careful examination of the evidence before us, we entertain no doubt of the insufficiency of this answer.    It does not cover the question proposed.   A party has a right to demand specific instruction, on a point framed by him to meet any legitimate hypothesis, that arises out of any given portion of the testimony he may consider reliable, isolated from, and independent of, such as he deems not so.    If this were not the rule, the question of credibility of witnesses, so peculiarly for the jury, might be effectually withdrawn from them ; at least the party would be deprived of the fair advantages of it.    That the question, whether McClelland Hood entered into possession under John M. Hood, was one of fact, will not be denied.   And if he did so, after returning from the east, in 1824, (and this is a part of the proposition made,) we must ascertain the time subsequent, when he first made any definite declarations of notorious, independent dominion over the land, adverse and hostile to John M. Hood.    In this inquiry, we must not overlook the principle, universally recognized, that the burden of clear and definite affirmative proof of all essential requisites to maintain it, is thrown upon the party who sets up title under the Statute of Limitations, against a legal one in writing, which is otherwise good and perfect.    After the return of McClelland Hood, in 1824, the history of the case derived from the testimony, nowhere discloses, as we can discover, anything like declarations of the character already indicated as necessary, until within a period less than that which is required to perfect a title under the statute.    The first definite period of subsequent unequivocal declarations of hostility to John M. Hood's title, is in 1833, or 1834, and appears in the testimony of James Duff, where he says, he requested a place for a school-house, and of John Redpath, at the time he speaks of a stranger riding by, and inquiring whose farm it was, and whether for sale, a circumstance in itself of but little importance.   And then, in 1839, as proved by Samuel Boggs, and at a still later period, as testified by John Merryman.   There is nothing, that we perceive, in the mere fact of "the payment of taxes," by McClelland Hood, nor in "the making of improvements, such as he made," inconsistent with the relation between the two brothers, in respect to the land, as the same is properly submitted in the point.

Instead of the affirmative answer that would have been proper,

followed up as perhaps it might have been, by reference to other material and pertinent facts in evidence touching the same question, and not sufficiently embraced in the point, if any, the court not only refused the instruction demanded, as matter of law, but submitted the facts, to which in the point, special reference is made, not separately and with precision, but in connection with all the evidence in the case as a whole, and in a manner very liable to confuse and mislead the jury. It is very manifest therefore, the court erred in thus answering the plaintiff's seventh point.

The questions involved in the ninth and tenth specifications of error, are so much alike in principle, that they may well be disposed of together.

Whenever the possession of one person is shown to have once been in subordination to the title of another, as is suggested in the plaintiff's eighth and ninth points, it will not be adjudged afterwards adverse to such title, without clear and positive proof of its having distinctly become so; for every presumption is in favor of the possession continuing in the same subordination to the title. *Rung* v. *Shoenberger*, 2 W. 23, 27. What shall be considered clear and positive proof on the subject, has not as yet, we believe, been judicially determined by this court, as matter of law. In *M'Masters* v. *Bell*, 2 Pa. R. 180, it is said to require some *decisive* act or declaration, to change the character of a possession. And in that case, some of the acts of ownership were, clearing the land, setting out and growing an orchard and erecting buildings,—a two-story house, with stone chimney in it,—on the premises. But these, it seems, being among other things, submitted to the jury, did not prevail with them to support the title under the statute in that case. Hence it might be, perhaps, fairly inferred, that the court did not adjudge these acts to be of that decisive character, as matter of law. In the later case of *Martin* v. *Jackson*, 3 Cas. R. 504, where the statute was set up against a mortgagee, the question is further discussed, and the preceding doctrine and cases recognized, and the following language used by Lewis, C. J., in delivering the opinion of this court. (p. 510, 511.) "Unless, it [the act of alleged hostility or *disseisin,*] was brought to the notice of the mortgagee, as a claim of title in hostility to his own, he is not to be affected by it as the commencement of an adverse possession. So long as the tenant who entered under his title, remains in possession, he has a right to presume that he continues there in fidelity to the tenure." And further, "But it is clear that he cannot be disseised by a secret act, which works no visible change in the possession, such as the payment of rent by the tenant in possession to another person, with the consent of the mortgagor." The soundness of these general views cannot be

[Hood *v.* Hood.]

questioned. They are founded upon the principle in the law of evidence, that whenever a state of things, or a personal relation is once established in proof, its continuance is presumed, until affirmatively shown to be otherwise.

The position taken here by the plaintiff, requires express notice of the change in the previous character of the tenure, before the statute shall begin to run. This may be considered the general doctrine derived from the cases and principles cited. But then what is express notice? The literal meaning of the term is, *plain* and *clear* notice; and is certainly no more than *actual* notice. We think therefore, that the charge of the court below, on the subject, is substantially correct. The learned judge, who delivered it, very properly said, the statute would not begin to run, until the possession became adverse by some *decisive* acts or declarations, showing the same to have become hostile, and, "done or made in such a manner, and under such circumstances, as to leave no doubt on the mind of the jury, that they were brought home to the knowledge of John M. Hood, or his agent, if he had any." We cannot say there is any material error in this answer. It is an exposition of the law, raised by a literal view of the language of these points. If not full enough to meet all the facts on the subject, the plaintiff could have varied the language, and thus required more definite instructions. It is no ground in general for reversal, that in answering the points, the court have omitted observations by way of application or explanation, that might have been very properly made, but which have not been specially required on the trial. The error, if any, has been more likely with the jury. Whether there was any sufficient evidence to justify the verdict rendered. is not a question for this court, on these specifications of error.

The exceptions taken in the court below, which are embraced in the eleventh, twelfth, and thirteenth specifications here, arise from evidence involving questions and principles very similar. Much that is applicable to these, has already been observed, in connection with the discussion of the eighth assignment or specification of error, and need not, therefore, be repeated. The plaintiffs tenth and eleventh points were very material, and there was certainly sufficient evidence to justify the submission of them. Therefore, according to the authorities already cited, and which are repeatedly recognized in other and subsequent cases, the plaintiff having fairly demanded it, was clearly entitled to a distinct and unqualified affirmative answer to both of them, and so that the principles and application of them could not well be misapprehended or misunderstood, by the jury. We look in vain for such throughout this charge. It is clear the statute had not run its course in 1828, and if the facts were found by the jury to be as assumed by plaintiff in these points,

[Hood *v.* Hood.]

there is no question but the law resulting therefrom, would be as therein claimed also.

The force of the objection to the qualifying observation of the court, in affirming plaintiff's twelfth point, depends upon whether there was any evidence that David acquired his eight acres from M'Clelland, instead of John M. Hood. If there was none, the court erred in submitting the question to the jury in the manner they have done.

The letter of January 5, 1828, from M'Clelland to John M. Hood, contains at least an implied recognition of the title of the latter, to this tract of land. It is also in evidence that M'Clelland was informed that John M. Hood was about to give a piece of the land to David, some time before the conveyance was made, and also his disinclination to do the same for him, and that he made no objections to the former, but murmuring some at the latter, seemed to acquiesce by looking out to buy elsewhere. David himself, testifies that he obtained the land from John M. Hood, and that this was known to M'Clelland. He also says that long before the deed was given, he had by correspondence with John M. Hood, at Philadelphia, where he resided, received from him a promise of it from the back part of the place, but by further negotiation, he finally secured it on the road, where it was surveyed off to him, by one Courtney, a surveyor, and the deed subsequently made to him for it by John M. Hood, and all this well known to M'Clelland during the time, but progressing without any objection whatever on his part, and without even consulting with him on the subject, so far as the evidence indicates. This appears like very complete evidence that this piece of eight acres was acquired by David from John M. We assume there is no other evidence in support of the hypothesis submitted by the court, than what is given by defendant's paper book ; for the argument and discussion here has been wholly based upon that. It is all really contained in the testimony of Mrs. David Hood, where she says, " M'Clelland helped to move my husband on the place," and again " M'Clelland marked it off for David." Mrs. Baldwin's understanding, without knowing from whom derived, except that it was not from the parties, nor when and where, amounts to nothing. From such evidence, a jury could not legally infer that it was M'Clelland, and not John M., who gave these eight acres to David. If this could be done, the title to land would depend upon shadows of evidence instead of substance. A position which no sound system of jurisprudence can sustain. It has always been adjudged error to permit a jury to pass upon a matter of alleged fact without evidence, or to submit evidence to a jury on instructions, that they may infer a given fact, when such inference cannot legally arise from it. *Switland* v. *Holgate,* 8 W. 385, 387 ;

[First Presbyterian Church of Harrisburg.]

*Gilchrist* v. *Rogers*, 6 W. & S. 488. We think, therefore, the court erred in the suggestion or intimation given to the jury, that they might find it was M'Clelland who gave the eight acres to David. The charge in this respect was erroneous, and the question presented by it material, from its relation to the point then under discussion.

The fourteenth and sixteenth specifications of error are not sustained. The plaintiff's thirteenth point is substantially and properly answered affirmatively in the general charge. Although it is usually the better practice to answer the points directly, as such, in their proper connections, yet an omission to do so, will not ordinarily be a cause for reversal. There is no error in the answer to defendant's eleventh point. The fifteenth error is assigned contrary to the rules of this court, and is, therefore, not considered. The principle involved in it, however, has already been sufficiently discussed.

Judgment reversed and a *venire facias de novo* awarded.