By the Court. Woodruff, J.
—It is quite apparent that the question whether or not there was in the defendants’ books kept at their office in San Francisco, an entry of the sale of a draft to John Harding, on the 18th of March, 1856, for $3,300, was of the utmost importance. The proofs, irrespective of this question, made it in no slight degree doubtful whether the transaction to which the plaintiff had testified, did not take place at some other office in San Francisco. But if, upon the defendants’ books there was entered in due course of business, such a draft, that fact was conclusive in favor of the plaintiff, not perhaps conclusive as an estoppel, but in the circumstances of this case so determinative and final, as evidence that they received the plaintiff’s money and issued the draft, that a verdict for the defendants would have been against evidence and could not have been sustained.
It is true that it was not the precise question in issue ; the defendants might possibly have received the money and issued the draft and no such entry have been made; but the entry could not have been made unless they had issued the draft which the plaintiff received; so the entry, if proved, directly established according to the inevitable judgment of the jury, the very point in issue between the parties.
The account given of the transaction by the plaintiff, made it in a high degree probable, if not certain, that at the office where it took place, the book or books were used in perfecting it. The testimony on the part of the defendants showed, that when drafts were sold by them at their office, there was made at the time an entry in the books stating the transaction, and particularly an entry of the purport of the draft,'in the margin of the book from which the drafts were taken; and therefore the very question whether the defendants sold to the plaintiff the alleged draft and received his money, might well turn upon the *360 conclusion of the jury, from the evidence, that such a draft was entered in the defendants’ books.
In view, then, of the vital importance of the question, the defendants’ counsel requested the judge to charge the jury, that they had no right to infer from Burbank’s testimony, to his conversation with Bell and Washburn at the defendants’ office; that, in truth, he did on a former occasion see in that office a book which a clerk examined in his presence, and said the books showed that such a draft had been given.
It is entirely clear, I think, that as matter of law, no such inference was warranted by Burbank’s testimony, to that conversation. He did not say in any part of his evidence, that he saw such a book, or that the clerk turned to or examined any book, or that the clerk said that the books showed that such a draft had been given, but only that he, (Burbank) told Bell and Washburn so. What he told Bell and Washburn, was not only not legal evidence for any purpose, but it did not prove, nor did it warrant a jury in inferring from it, that the circumstances existed. They were not parties to the suit; such a narration by Burbank to them, whether they denied its truth or were silent, could not legally be taken as an admission that the matters narrated were true. Had this part of Burbank’s testimony been objected to, it must have been excluded. Being given, without objection, it proved nothing, except that Burbank did say to Bell and Washburn what he testifies he said to them.
It does not however follow that the refusal of the judge to give the instruction, was ground of exception. I am not prepared to say, and in this case I do not think it necessary to say or to deny, that counsel may select separate pieces of testimony and in reference to each require an instruction to the jury defining the inferences of fact which they may or may not draw from it. It can readily be perceived, that a practice which allowed this, might lead to great embarrassment, and be so inconvenient as to render the proper and safe conduct of a trial almost impos *361 sible. And yet I think it quite clear that it is error to instruct a jury that they may find a material fact from the proofs where there is no legal testimony of such fact; and that it is no less an error to instruct a jury that particular evidence will warrant them in inferring a material fact when no such inference can legally arise therV-’:m.
In this aspect of the subject, the in?' m actually given by the judge, becomes most impc He not only refused to charge that they were not wacc;.:v:edin inferring the facts from the testimony that Burbank r-r sauted to Bell and Washburn, but he said:
“ Burbank’s testimony does not in terms and words allege the fact that the clerk, ontho first occasion when he called, examined the books and said the draft had been drawn, &c.; and it is for •the jury to say how he is to be understood.”
Now the testimony of Burbank was in writing, the language was perfectly intelligible; it did not admit of doubt as to its proper meaning; it meant, and it could not legally be held to mean anything more than its terms legally imported, viz : that he told Bell and Washburn just what he said he told them.
In connection with the defendants’ request, this submission to the jury to say “ how he is to be understood,” seems equivalent to saying, “ I not only refuse to instruct you that you may not infer from this testimony that the books were examined and that the clerk stated that they showed that such a draft had been given, but I do instruct you that you will commit no error if you make that inference ; and not only so, you may, if you think proper, conclude that the witness is to be understood as testifying that the facts are as he stated them to be.” When the particular testimony which is the subject of instruction, will not warrant an inference of a material fact, the court ought not to submit it to the jury as the ground of conjecture, or leave it to them to infer the fact therefrom.
These views are sustained by Manwell v. Briggs, (17 Verm. 176 ;) Evans v. Mengel, (1 Barr. Penn. 68 ;) Gilchrist v. *362 Rogers, (6 Watts & Serg. 488 ;) Cobb v. Fogalman, (1 Iredell, 440 ; Hunt v. Toulmin, (1 Stew. & Porter, 178.)
Whether the counsel have or have not a right to call for such specific instructions in relation to facts which are themselves only collateral and not directly in issue, when the court do assume to give specific instructions respecting such facts, those instructions should be correct, or, as I think, an exception must be sustained. Had the judge in this instance simply refused to give the instructions asked for, or if he had contented himself with saying that Burbank had not sworn that the clerk informed him that the draft was given, and examined a book and said that the book showed that the 'draft was given, the argument urged upon us that a judge is not bound to give specific instructions relating to collateral facts, or facts which are not directly in issue, but which, if proved, are only evidence from which, by way of further inference the fact in issue is to be derived, would have had much plausibility at least. But here, according to the charge, as it may well have been understood, the jury were told that they were to say whether Burbank’s testimony imported that the clerk informed him, and did examine the books, and state that the books showed that such draft had .been given.
If I were satisfied that, according to the strictest rule, the defendant was not entitled to an exception; that the refusal and charge was susceptible of a construction consistent with the law, was so indefinite in its meaning that we could not say it was necessarily against the law, I must nevertheless say that it was calculated to mislead the jury in a matter which (where the other testimony was doubtful and conflicting) was vital to the case, and therefore to require us to grant a new trial.
Its tendency, to my mind, went even further than is above suggested. The jury may easily have concluded, (from the refusal of the judge to charge as requested, and from the manner he left the subject to them,) that they would be warranted in inferring, from this part of Burbank’s testimony, not only that the clerk examined the *363 book and told him what he stated, but that he did there find the entry in the book, produced and examined. I cannot resist the conclusion, that the manner in which this testimony was submitted to the jury, invited their speculation and conjecture founded thereon, and tended to do injustice to the defendants by allowing inferences respecting a material question which the testimony did not war-want. (Benham v. Cary, 11 Wend. 83.)
The case seems to us to illustrate the danger and the impropriety of supposing what seems to us worse than hearsay testimony to be put in, and then calling upon the court to define and limit its effect, and declare what inferences may be drawn therefrom. Had the defendants objected to it, no such embarrassment'could have, we think, arisen; and had the court, when asked to make it the subject of specific instruction, simply declared that it proved only what it purported, viz., that such a conversation took place, we should riot be disposed to interpose. The defendants could not in that event have asked us to set aside the verdict on any idea that the jury were probably misled by the evidence itself. But the manner in which the testimony was specifically left to them we think was wrong, and that it was calculated to mislead them on a very important question when the case was, upon the whole evidence, of a very doubtful character.
A new trial should be granted with costs to abide the event.
Robertson, J.
—The exception to the refusal to instruct as requested, I do not think well taken. .1 do not deny that, if a party fears that a jury may draw an inadmissible inference from facts legitimately in evidence for other purposes, and there is room for believing there may be danger of it, he has a right to request the court to warn the jury against making such inferences ; but the evidence from which the defendant feared that the jury would infer the fact of an entry in the books, was not even hearsay evidence of it, 'unless the fact that a witness said so to another person be such *364 evidence. If such evidence had not been material in any other ,i .... -f view, and was only admissible if unobjected • : -■ - .c-arsay evidence of a material fact, it was clearly duty of an objecting party, to object to hearsay testimony when it is given, and not to wait for the charge of the court in order to request an instruction to the jury to disregard it, which might bring up a variety of intimate and perplexing considerations. I do not find this testimony to be hearsay evidence of the fact in controversy. If the witness had stated that some one had told him that there was in some book the entry which formed the subject of investigation, it would be such hearsay evidence; but as he only swore that he told a third person that he had been so informed by some one else, without swearing that he had been so informed, the only fact of which such testimony is evidence is, that he had made such statement, which, whether true or false, was wholly immaterial and irrelevant. The request to charge, refers entirely to the second conversation, and therefore the character of the first is entirely immaterial. The question then recurs, whether a party has a right to require a court to charge a jury that testimony which is neither primary -nor secondary, nor circnmstantial nor hearsay evidence of a fact, does not tend, to prove it; and it appears to me not, particularly where such fact is not itself directly in issue, but is only circumstantial evidence thereof. It would lead to a wild and visionary speculation as to what might possibly influence a jury; or a trial of skill and ingenuity between the court and counsel as to what imaginary state of facts might be circumstantial evidence of the main facts in issue, and wThat part of the testimony might, by possibility, be taken by the jury to be proof of the existence of such imaginary facts. Jurors, it is true, may come to a conclusion by mental processes other than those of the most logical or legal character ; and to guard against the danger of such operations, counsel have the privilege of addressing them ; but the court cannot be required to check every imaginable mental vagary, by solemn instruction that it is not legal. *365 It cannot be anything but such a vagary that would infer that there was an entry in the books of the defendants, because a witness had testified that he had once told a person in the defendants’ office that another person had told him, at another time, in that office, that there was such entry. I therefore think the request to charge was properly denied.
But the actual charge consequent upon such refusal, is open to more criticism. Standing by itself, it is apparently harmless and unobjectionable, for the witness in question did not allege, that on the first answer when he called, the clerk examined the books, although he did say the drafts had been drawn, and it was doubtless a matter for the jury to say how he was to be understood if there was any doubt about his language; but taken in connection with the. previous request to charge and the use of the qualification “ in terms or words,” and the previous part of the sentence, the words how he “ is to be understood,” is to be qualified by adding, “in respect to such clerks, having examined the books.” This, undoubtedly, was equivalent to charging them that they were at liberty to construe his testimony into an implied statement that such clerk did examine the books. I do not think there was legally, enough cf improbability that the clerk made the statement he did, without looking at the books, as was suggested in the argument, to have warranted the court in instructing the jury that they were at liberty to infer that the witness meant to testify that the clerk did look at the books, by testifying either that such clerk said the draft was drawn, or that the witness had stated that the clerk had looked at the books.
The jury, taking the permission awarded them by the court, may have understood the testimony of the witness as implying, although not in terms stating, that the clerk did inspect said books before he made the answer; that the existence of the entry there was the justification of such answer, and that therefore the draft was bought of the defendants and of no one else. For such a prejudice to the defendants, the only remedy is a new trial.
*366 I concur in thinking, that a new trial should be ordered, with costs to abide the event.
Ordered accordingly.