## ELWELL v. FABRE.

*(Common Pleas of New York City and County, General Term. April 6, 1891.)*

TRIAL—INSTRUCTIONS.

> Defendant, a ship-owner, contracted with plaintiff for the use of his pier in discharging cargo from his ships, agreeing to pay a certain amount extra for each day that inward cargo, over and above a certain bulk, should be allowed to remain on the pier after the ship's departure. In an action by the lessee against the shipowner for compensation for cargo so allowed to remain on the pier the court charged that "when a common carrier delivers the goods according to the terms of the bill of lading, and notifies the consignee at the port of arrival, and the consignee exercises any act of ownership over them, the liability of the common carrier ends." *Held,* that the instruction was misleading, being without application to the facts of the case; the liability of the carrier respecting the goods in no wise affecting his promise to pay rent for their storage to a third party.

Appeal from trial term.

Action by John D. Elwell against Cyprien Fabre upon a contract. Plaintiff alleged that on November 11, 1888, the defendant's steamer Burgundia left his pier, leaving on it cargo, viz., a quantity of pomegranates in excess of the bulk of 200 barrels, and that that remained there till December 29th, and that by virtue of a contract between the parties he was entitled to $1,200 therefor. Defendant answered that he had paid the plaintiff, under this clause of the contract, up to the 16th of November, and he was not entitled to anything after that; and that the pomegranates had been, before the 16th, delivered to the consignees of them, and were no longer within the provisions of the contract. Evidence was given as to the bulk of the pomegranates, and as to their having been delivered to the consignees, and the court left it to the jury to say if they had been delivered, and the jury found for defendant. The plaintiff appeals from an order denying his motion for a new trial.

Argued before ALLEN, P. J., and BISCHOFF and PRYOR, JJ.

*Eustace Conway,* for appellant. *R. D. Benedict,* for respondent.

BISCHOFF, J.    Plaintiff, being the lessee of the Columbia pier, and defendant, operating a line of steamers, entered into a written contract for the use of the pier during the year 1888.    This agreement contained the following provision:  "The parties of the second part further and in addition agree to pay to the party of the first part twenty-five (25) dollars for each day outward cargo above the bulk of 200 bbls. for any of their steamers is on said pier previous to its arrival, and twenty-five (25) each day inward or outward cargo remains on the pier after departure from the pier for sea of any of their steamers; but a small quantity remaining on the pier after departure of steamers, say up to the bulk of 200 bbls., not to count if the pier is not employed for another steamer."    On November 2d defendant's steamer Burgundia arrived with a quantity of pomegranates and grapes consigned to Fabrici & Story, which were discharged upon the pier, and there remained until December 28th; the steamer having again left port on November 11th.    For November 12th, 13th, 14th, 15th, and 16th, defendant paid the stipulated sum for the storage of these pomegranates and grapes, but declines to pay for the succeeding days, on the ground that on or before November 16th the merchandise had been turned over to and accepted by the consignees, and that he was thereafter discharged in respect to this merchandise from any further liability for the use of the pier.    Plaintiff thereupon commenced this action, to recover, among other things, the stipulated sum for the use of his pier from November 17th to December 28th, both inclusive, a period of 42 days, which, at $25 per day, amounted to $1,050; and on the trial the defendant was permitted to introduce evidence tending to show that some time prior to November 16th the consignees assumed the custody of the pomegranates and grapes, and removed a part thereof; the bulk, however, remaining on the pier for the period stated.    The court charged the jury that "when a common carrier delivers the goods according to the terms of the bill of lading, and notifies the consignee at the port of arrival, and the consignee exercises any act of ownership over them, the liability of the common carrier ends."    This, of course, as a proposition of law, is true, but clearly it can have reference only to the relations of the common carrier and the consignee, and the liability of the former to the latter respecting the goods, and can in no wise affect the liability of the common carrier upon his promise to pay rent to a third party for the storage of goods carried by him and discharged upon premises let to him for that purpose.    The proposition of law contained within this part of the charge had no application, therefore, to the facts of the case.    It was misleading, and we cannot say that the jury was not influenced thereby to the prejudice of the plaintiff.·  *Green* v. *White*, 37 N. Y. 405, 407; *Harding* v. *Barney*, 7 Bosw. 353, 362.    Again, the court charged substantially that the defendant was not liable if the jury found from the evidence that the pomegranates and grapes had been delivered to the consignees, and left by the latter upon the pier.    This was erroneous, since the defendant's liability to pay rent for cargo deposited on the pier could in no manner have been impaired by the failure of the consignees, who had no relations with the plaintiff, to remove the merchandise agreeably to an understanding between such consignees and the defendant, in the absence of proof that the plaintiff, with knowledge of the delivery to the consignees, assented to their further use of the pier for the storage of the merchandise.    The exceptions to the charge above referred to are sufficient to call for a reversal, but under the ruling of the court of appeals in *Goodsell* v. *Telegraph Co.*, 109 N. Y. 147, 16 N. E. Rep. 324, we feel compelled to direct a reversal of the entire judgment, unless plaintiff consents to an affirmance upon this appeal.    Judgment reversed, new trial ordered, costs to abide event, unless plaintiff files a stipulation consenting to an affirmance thereof, in which event that part of the judgment which is affected by this appeal is affirmed, with costs to defendant, respondent herein.